IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

ASHRAF HASSAN-GOUDA,

        Defendant.

Criminal Action
No. 07-258 (JBS)

**OPINION**

APPEARANCES:

Shawn T. Noud, Trial Attorney
U.S. Department of Justice
P.O. Box 972
Ben Franklin Station
Washington, D.C. 20044
    -and-
Yael T. Epstein, Trial Attorney
Department of Justice
Tax Division
Criminal Enforcement Section
601 D Street NW
Washington, DC 20004
    Attorneys for United States of America

Lori M. Koch, Assistant Federal Public Defender
Federal Public Defender's Office
800-840 Cooper Street
Suite 350
Camden, NJ 08102
    Attorney for Defendant Ashraf Hassan-Gouda

**SIMANDLE,** Chief Judge:

    **I.   INTRODUCTION**

    Defendant Ashraf Hassan-Gouda ("Gouda") has filed an omnibus pretrial motion containing motions to dismiss the Indictment due to violations of (1) his right to a speedy trial

under the Sixth Amendment, (2) Fed. R. Crim. P. 48(b), and (3) the applicable statute of limitations. There has been a six year delay since the Indictment was entered on March 27, 2007. The principal issue before the Court is whether this delay was due to the Government's lack of diligence, as Defendant argues, or due to Defendant's post-Indictment decision to flee arrest on April 6, 2007 and move to Egypt, as the Government argues. Ample evidence shows that Defendant was aware that he was under Indictment and, thus, that he moved to Egypt as a fugitive to flee arrest and absent himself in Egypt and Europe until captured in Germany in 2011 and extradited to this country in 2012 to face these charges. The Court will deny Defendant's motions to dismiss the Indictment because Defendant is responsible for the delay in bringing this case to trial.

## II. BACKGROUND

### A. Procedural History

Before the Court could address Defendant's pre-trial motions, the Court needed to resolve disputes regarding which evidence it could consider regarding Defendant's knowledge of the Indictment. Gouda took the position, in support of his speedy trial motion, that he was unaware of the Indictment in this case when he moved to Egypt in April, 2007, notwithstanding the fact that his attorney, Joseph Gindhart, had received it in

March, 2007 and had agreed to produce Gouda in court for his initial appearance. The Court held a hearing on February 25, 2013, and issued an Opinion on March 21, 2013 summarizing these disputes and holding that Defendant had waived the attorney-client privilege regarding his communications with his former attorney Joseph Gindhart about his notice of the Indictment. United States v. Hassan-Gouda, CRIM. 07-258 JBS, 2013 WL 1187087 (D.N.J. Mar. 21, 2013) ("March 21, 2013 Opinion"). The Court issued an Order on March 21, 2013 instructing Defendant to furnish to the Government "redacted copies of Mr. Gindhart's documents, including the billing statement, that relate to his communications with Defendant regarding the existence of the Indictment . . . ." [Docket Item 29 at 2.] The March 21, 2013 Opinion and Order also scheduled a hearing to adduce additional testimony from Mr. Gindhart and Ahmed Sallam, Defendant's longtime employee, on the subject of Defendant's knowledge of the Indictment against him. The defense complied with the order and produced Gindhart's redacted billing records for the relevant time period.

On April 3, 2013, the Government filed a letter submitting Government Exhibit G-9, Mr. Gindhart's redacted billing records, and noting that Defendant did not object to admission of this exhibit. [Docket Item 33]. The Government's letter also informed the Court that, if Exhibit G-9 were admitted into evidence, then

3

additional testimony would be unnecessary. On April 4, 2013, the Court issued an Order admitting Exhibit G-9 into evidence and cancelling the scheduled hearing. [Docket Item 34 at 1.]

The factual record is complete, including testimony and exhibits received at the hearing on February 25, 2013, and Defendant's pretrial motions [Docket Item 20] are now ripe for decision.

### B. Factual Background

The March 21, 2013 Opinion extensively summarized the factual background relevant to Defendant's motions to dismiss the Indictment. Gouda, 2013 WL 1187087 at *1-2. The Court will not repeat those factual findings here. The significant facts are: On March 27, 2007, a federal grand jury returned an Indictment against Defendant Gouda for conspiracy to defraud the United States and the IRS by aiding in the preparation of fraudulent tax returns, plus 15 substantive counts of aiding in the preparation of fraudulent tax returns. [Docket Item 1.] The Government faxed the Indictment to Defendant's attorney Joseph Gindhart on March 28, 2007 in lieu of executing an arrest warrant for Gouda, pursuant to an arrangement with Gindhart that Gindhart would arrange for Gouda to appear in court to face the charges. Defendant was scheduled to appear for an arraignment before U.S. Magistrate Judge Joel Schneider on April 3, 2007. On April 2, 2007, Gindhart wrote Judge Schneider to request

adjournment of the arraignment because Gouda had been admitted to Atlantic City Medical Center with a heart attack. Defendant then suddenly moved to Egypt on April 6, 2007. He remained outside the United States until he was arrested in Germany in 2011 and extradited to this country in 2012.

### III. PARTIES' ARGUMENTS

Defendant filed an omnibus pre-trial motion asking the Court for the following relief: (1) holding a hearing to determine whether Defendant's Speedy Trial Rights under the Sixth Amendment or Federal Rule of Criminal Procedure 48(b) have been violated and, if so, to grant Defendant's motion to dismiss; (2) holding a hearing to determine whether the Statute of Limitations has been violated in this matter; (3) holding a hearing to determine the appropriate sanctions for the Government's failure to comply with Article 9 of the Extradition Treaty between the United States and Germany; (4) compelling the Government to disclose all exculpatory or mitigating evidence; (5) ordering the government to disclose Rule 404(b) evidence earlier than 10 days before trial; and (6) ordering the government to provide a written summary of anticipated expert testimony. [Docket Item 20.]

Defendant argues that his constitutional rights to a speedy trial have been violated and that the statute of limitations for

offenses involving assisting in the preparation of tax returns expired in 2010, six years after the last offense. Defendant concludes, therefore, that the Government's power to reach and try him expired in 2010. (Def. Mem. Law Supp. Pretrial Mots. at 13.) Defendant argues that the record "does not demonstrate that defendant was ever advised of the charges against him, or that they had been formally filed." (Def. Mem. Law Supp. Pretrial Mots. at 12.)

The Government filed opposition [Docket Item 21] arguing that it made a diligent, good faith to bring Gouda to trial, including, inter alia, confirming that Defendant had gone to Egypt, obtaining an arrest warrant, requesting Defendant be entered as a fugitive into the National Criminal Information System and the Treasury Enforcement Communications System, and directing INTERPOL to issue a red notice.[1] The Government did not pursue extradition from Egypt because such a gesture would have been futile. In addition, the Government argues that the statute of limitations was tolled upon the bringing of the Indictment.

---

[1] A red notice calls on INTERPOL member nations to arrest a defendant if he enters their jurisdiction. Before the red notice is published, INTERPOL issues a diffusion message announcing that the red notice is pending.

6

## IV. ANALYSIS

### A. Sixth Amendment Right to Speedy Trial

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. Amend. VI. In this case, six years have passed since the Indictment was returned. This length of time is presumptively prejudicial, and the Court must conduct an inquiry into the causes of the delay and the possible prejudice that may result. The Court must consider four factors: "Length of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972).

### B. Application of Barker Factors

As discussed above, the six-year delay is presumptively prejudicial and merits an intensive inquiry.

The Barker analysis hinges on the second factor, i.e. the reason for delay. See United States v. Loud Hawk, 474 U.S. 302, 315 (1986) ("The flag all litigants seek to capture is the second factor, the reason for delay.") The second Barker factor "cuts sharply" against a Defendant whose "initial decision to flee . . . is the root cause of the long delay." United States v. Mitchell, 957 F.2d 465, 469 (7th Cir. 1992) "A defendant's claim that the government violated his right to a speedy trial

is seriously undermined when the defendant, and not the government, is the cause of the delay." Id.

The evidence now before the Court clearly shows that Defendant Gouda moved to Egypt to flee arrest and avoid his appearance in court upon the Indictment in this case. Government Exhibit G-9, the redacted billing record of Gouda's former attorney Joseph Gindhart, establishes that Defendant was aware that he was under Indictment. On March 27, 2007 Gindhart received a "[t]elephone call from Client re Indictment." (Ex. G-9.) This evidence is consistent with the testimony of Defendant's former employee Ahmed Sallam, who testified that he informed Defendant about the Indictment when Sallam saw it announced on television. Gouda, 2013 WL 1187087 at *5. The billing record notes, on March 28, 2007, "[m]eeting with Client at his office: Indictment." (Ex. G-9.) The billing record also corroborates Sallam's testimony that he observed a meeting between Gouda and Gindhart the day after Sallam told Gouda about the Indictment. Gouda, 2013 WL 1197087 at *5. The billing record shows that Gindhart called Gouda on March 28, 2007 to discuss his "receipt and analysis of indictment"; that Gindhart called Gouda on March 29, 2007 to discuss "[c]opy and analysis of tax returns in indictment"; and that, on March 31, 2007, Gindhart had a "Meeting with client at Tax World re: Indictment." (Ex. G-9.)

The Court incorporates by reference its findings in the March 21, 2013 Opinion, which extensively described other direct and circumstantial evidence, including Sallam's testimony, showing that Gouda went to Egypt to flee arrest after he became aware of the Indictment. Gouda, 2013 WL 1187087 at *5-6.[2]

The fact that Gouda was aware of the Indictment before he fled to Egypt has now been established. Any claim by Gouda that he had no knowledge of the Indictment is fatuous.

Defendant also argues that the Government is responsible for failing to secure his extradition sooner. For example, he notes that, between issuance of the arrest warrant on April 19, 2007 and issuance of the INTERPOL diffusion notice on November 2, 2011, he "was living openly in Egypt and traveling extensively." (Def. Mem. Law Supp. Pretrial Mots. at 4.) Four years passed between when Gouda left the country and when

---

[2] Moreover, the nature of Gouda's departure for Egypt also provides circumstantial evidence that he knew he was under Indictment. Gouda was scheduled for an arraignment on April 3, 2007. He did not appear due to hospitalization for a heart attack. On April 6, 2007, Gindhart's attorney wrote a letter stating that Gouda had been released to bed rest at home following a heart catheterization/stint implant. [Docket Item 21-2.] Yet Gouda has acknowledged that he left the United States for Egypt on April 6, 2007. (Feb. 21, 2013 Gouda Aff. ¶ 7.) Instead of being on bed rest after a substantial medical procedure, Gouda flew to Egypt on a two-day trip by way of Abu Dhabi. (Id.)

INTERPOL issued the diffusion notice.[3] But because Gouda left the United States to flee arrest, any delay in issuing the diffusion notice is vastly outweighed by his conduct, particularly because a red notice and extradition proceedings would have been unnecessary if Gouda had not fled. See United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998) ("Although both parties contributed to the post-indictment delay, it is clear that [defendant] bears the bulk of responsibility in this regard" because "[a]fter his arrest, [defendant] jumped bond and remained a fugitive for more than two years.")

Moreover the Government could not extradite Gouda from Egypt. Gouda is an Egyptian citizen, and the extradition treaty between the United States and Egypt specifically provides that

---

[3] Jocylin Hill, IRS liaison to INTERPOL, testified that, in general, one to two months pass between when the agency liaison receives an application for a red notice and when the diffusion notice is issued. (Feb. 25, 2013 Hr'g Tr. 84:17-21.) After the diffusion notice is issued, another three to six months can pass before the red notice is published. (Feb. 25, 2013 Hr'g Tr. 85:5-8.) Hill noted that a fraud case may have less priority and moves through the system more slowly than a case with more severe charges, such as murder or child endangerment. (Feb. 25, 2013 Hr'g Tr. 82:16-22.) The Government submitted the red notice request to INTERPOL in June of 2009. (Feb. 25, 2013 Hr'g Tr., Gov't Ex. 6.) INTERPOL initiated action on the Gouda matter on January 28, 2010. (Feb. 25, 2013 Hr'g, Gov't Ex. 6) Hill speculated that the delay between when INTERPOL received the file and when it issued the diffusion notice could be attributed to backlog in her predecessor's case load. (Feb. 25, 2013 Hr'g Tr. 93:12-14.) In any event, there was a steady and orderly processing of the request for international criminal case cooperation, an extraordinary remedy necessitated only by Gouda's knowing refusal to appear before this Court.

"[n]either of the contracting parties shall be bound to deliver up its own citizens under the stipulations of this treaty." 1874 U.S.T. LEXIS 17, 5-6 (U.S.T. 1874). In addition, tax crimes are not in the list of crimes for which a person can be "delivered up"; the list includes, inter alia, parricide, assassination, rape, arson, and mutiny on a ship. Id. at *2-3. "The Government is not duty-bound to pursue futile legal gestures to return the defendant for trial." Mitchell, 957 F.2d at 469 (finding that second Barker factor weighed against Defendant who had fled to country from which extradition was not possible). The Government is not responsible for any delay attributable to futility of extradition from Egypt.

The third factor, i.e., Defendant's assertion of his right to a speedy trial, weighs in the Government's favor because Gouda did not assert this right until January 7, 2013, when he filed the motion presently before the Court. The Court has immediately taken up this motion.

In terms of the fourth factor, the Supreme Court has noted three considerations in terms of assessing prejudice to the Defendant and protecting the interests for which the speedy trial right was designed: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker at 532. Defendant Gouda has not

11

identified any ways in which his defense will be prejudiced by the delay. Defendant also has not been subject to oppressive pretrial incarceration. He was not incarcerated in this country until June of 2012[4] and most of the delay in commencing trial since June of 2012 is attributable to the five continuances that Defendant has requested to prepare his defense, which are not part of the speedy trial calculus. Gouda was not incarcerated before his arrest in Germany, and the Third Circuit has noted that "a waiting period during which the defendant is not detained presents fewer concerns than a wait accompanied by pretrial incarceration." Dent, 149 F.3d at 184. Finally, because Gouda fled the United States as a fugitive, any anxiety and concern that he may have experienced cannot be held against the Government. His anxiety was likewise of his own making, being too anxious and fearful about this case to simply present himself in court, and choosing instead to give up his bed rest following his heart procedure to endure a two-day trip to Egypt. In total, this factor weighs in the Government's favor because

---

[4] It is not clear from the record whether Defendant was incarcerated during the extradition proceedings in Germany. Even assuming, arguendo, that he was incarcerated since his arrest in Germany on December 11, 2011, it seems incongruous to weigh that time period against the Government. The Government asserts that Gouda contested the extradition and refused to agree to simpler, faster proceedings. Moreover, if Gouda left the United States to flee arrest, then the Government cannot be faulted for the extradition proceedings that were required to return him to this country for trial.

Gouda was not subject to oppressive pretrial incarceration and because he has not identified ways in which his defense would be prejudiced.

Application of the Barker factors thus shows that Defendant is not entitled to dismissal of the Indictment; quite simply, he knowingly caused the delay that occurred in bringing this case to trial.

### C. Federal Rule of Criminal Procedure 48(b)

Federal Rule of Criminal Procedure 48(b) mandates that the court "may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). This Rule "refers to unreasonable or unnecessary delays on the part of the government." United States v. Hudson, 545 F.2d 724, 725 (10th Cir. 1976). As explained above, the fault for the delay in bringing this case to trial lies with the Defendant. The Court will not dismiss the Indictment.

### D. Statute of Limitations

Defendant also argues that the statute of limitations bars the charges against him because "the United States Government's power to reach and try him expired as of May 4, 2010 . . . [and] did not extend until November 2, 2011, the date the record shows was the first contact by United States law enforcement authorities with Interpol." (Def. Mem. Law Supp. Pretrial Mots. at 13.) The Court has already established, however, that this

13

delay is due to Defendant's flight from the United States as a fugitive. Defendant's fugitive status obviates any state of limitations argument. "The time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States or is a fugitive from justice . . . shall not be taken as any part of the time limited by law . . . ." 26 U.S.C. 6531. Moreover, "[o]nce an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment." United States v. Grady, 544 F.2d 598, 601 (2d Cir. 1976). The Indictment was brought on March 27, 2007, and Defendant has not disputed its timeliness.[5] The statute of limitations was therefore tolled on March 27, 2007.

Defendant has also made a motion for sanctions for the Government's failure to comply with Article 9 of the Extradition Treaty between the United States and Germany, which prohibits extradition when prosecution is barred by the statute of limitations. Extradition art. 9, U.S.-Ger., June 20, 1978, 32

---

[5] The limitations period for offenses arising under internal revenue laws is six years. 26 U.S.C. 6531. Defendant has not alleged that the statute of limitations had expired as of March 27, 2007, the date that the Government returned the Indictment. Defendant's sole statute of limitations argument relates to the delay that occurred between March of 2007, when the charges were filed, and November of 2011, when the Government contacted Interpol. The Court has addressed this delay and has not addressed the timeliness of the initial Indictment, as Defendant has not made that argument.

U.S.T. 1485, 1980 WL 309144. Given that the Court finds that there was no violation of the statute of limitations, Defendant's motion for sanctions is also denied.

### V.   DEFENDANT'S DISCOVERY MOTIONS

Defendant has filed discovery-related motions to compel the Government to disclose all exculpatory or mitigating evidence, to receive Rule 404(b) evidence earlier than 10 days before trial, and to receive a written summary of the Government's anticipated expert testimony. The Government responded that it is aware of its continuing obligation to disclose all exculpatory or mitigating evidence, that it has previously disclosed such evidence to Defendant, and that it is presently unaware of further evidence that must be disclosed. Because there is no present dispute, the Court will dismiss Defendant's motion for exculpatory or mitigating evidence as moot.

Given the complexity of this action, the Court will revise its previous standing order and direct that the Government must disclose all Rule 404(b) evidence not less than fourteen (14) days prior to trial. Defendant has also requested a pretrial hearing to determine the propriety of the Government's use of such 404(b) material. The Government has not yet indicated its intentions to use such evidence, and the Court will schedule a

pretrial hearing regarding admissibility of such evidence, if necessary, upon request.

Finally, if the Government chooses to use expert testimony, then it must disclose such evidence not less than twenty-one (21) days before trial.

### VI. CONCLUSION

The evidence conclusively shows that Defendant was aware that he was under Indictment and, therefore, that he fled to Egypt as a fugitive. The Defendant, not the Government, is responsible for the delay in bringing this case to trial. Defendant's motions to dismiss the Indictment for violations of speedy trial rights and the statute of limitations are denied. The accompanying Order will be entered.

**April 8, 2013**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge